David Eiseman (Bar No. 114758)
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone:    (415) 875-6600
Facsimile:    (415) 875-6700
Email:  davideiseman@quinnemanuel.com

Ryan S. Goldstein (Bar No. 208444)
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
NBF Hibiya Building, 25F
1-1-7, Uchisaiwai-cho, Chiyoda-ku
Tokyo 100-0011, Japan
Telephone:    +81 3 5510 1711
Facsimile:    +81 3 5510 1712
Email:  ryangoldstein@quinnemanuel.com

Attorneys for Defendant KYOCERA
COMMUNICATIONS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

|  |  |
|---|---|
| ADAPTIX, INC., <br><br> Plaintiff, <br><br> v. <br><br> KYOCERA CORPORATION, ET AL., <br><br><br> Defendants. | Case No. 5:14-cv-02895-PSG <br><br> **JURY TRIAL DEMANDED** |

**DEFENDANT KYOCERA COMMUNICATIONS, INC.'S FIRST
AMENDED ANSWER AND COUNTERCLAIMS TO PLAINTIFF'S COMPLAINT**

Defendant Kyocera Communications, Inc. ("Kyocera") hereby files its First Amended

Answer and Counterclaims to Plaintiff Adaptix, Inc.'s ("Adaptix") Complaint for Patent

Infringement ("Complaint").  Kyocera denies all allegations in the Complaint, whether express or

implied, unless expressly admitted in this Answer.  Kyocera further denies that Adaptix is entitled

to the relief requested in the Complaint or any other relief.  To the extent any response is required
to the unnumbered preamble in the Complaint:  Kyocera denies the allegations in the preamble.

## THE PARTIES

1.      Kyocera lacks sufficient knowledge or information to form a belief as to the truth
of the allegations set forth in Paragraph 1 of the Complaint and on that basis denies those
allegations.

2.      Kyocera admits the allegations in Paragraph 2 of the Complaint.

3.      Kyocera denies that the zip code for the principal place of business of Kyocera
Communications Inc. is 91923.  Kyocera admits the remaining allegations in Paragraph 3 of the
Complaint.

4.      Kyocera admits the allegations in Paragraph 4 of the Complaint.

5.      Kyocera admits the allegations in Paragraph 5 of the Complaint.

6.      Kyocera lacks sufficient knowledge or information to form a belief as to the truth
of the allegations set forth in Paragraph 6 of the Complaint and on that basis denies those
allegations.

## JURISDICTION AND VENUE

7.      Kyocera admits that the Complaint purports to state a claim for patent infringement
under the patent laws of the United States, Title 35 of the United States Code, but denies that
Adaptix's purported claims have any merit.  To the extent Paragraph 7 of the Complaint states a
conclusion of law, no answer is required.  To the extent Paragraph 7 of the Complaint relates to
any defendant other than Kyocera, Kyocera lacks sufficient knowledge or information to form a
belief as to the truth of those allegations and on that basis denies those allegations.

8.      Kyocera admits that Adaptix purports to base venue under 28 U.S.C. §§ 1391(b)-
(c) and 1400(b), but denies that the Eastern District of Texas was the most convenient venue for
adjudication of claims raised by Adaptix in this action.  To the extent Paragraph 8 of the
Complaint states a conclusion of law, no answer is required.  Kyocera admits that it conducts
business in the Eastern District of Texas, but denies that a patent infringement cause of action has
arisen as a result of its activities and specifically denies that any such activities have constituted

patent infringement in that or any other district.  To the extent Paragraph 8 of the Complaint relates to any defendant other than Kyocera, Kyocera lacks sufficient knowledge or information to form a belief as to the truth of those allegations and on that basis denies those allegations.

9.     To the extent Paragraph 9 of the Complaint states a conclusion of law, no answer is required.  Kyocera admits that it conducts business in the Eastern District of Texas, but denies that a patent infringement cause of action has arisen as a result of its activities and specifically denies that any such activities have constituted patent infringement in that or any other district.  To the extent Paragraph 9 of the Complaint relates to any defendant other than Kyocera, Kyocera lacks sufficient knowledge or information to form a belief as to the truth of those allegations and on that basis denies those allegations.

10.     Kyocera denies the allegations in Paragraph 10 of the Complaint.

## COUNT I

### (INFRINGEMENT OF U.S. PATENT NO. 7,454,212)

11.     Kyocera incorporates by reference its responses to Paragraphs 1-10 of the Complaint set forth above as if fully restated in this paragraph.

12.     Kyocera admits that the Complaint purports to state a cause of action for patent infringement, but denies that there has been any act of infringement by Kyocera.  To the extent Paragraph 12 of the Complaint states a conclusion of law, no answer is required.

13.     Kyocera admits that the document attached as Exhibit A to the Complaint purports to be United States Patent No. 7,454,212 ("the '212 patent") and on its face is titled "OFDMA WITH ADAPTIVE SUBCARRIER-CLUSTER CONFIGURATION AND SELECTIVE LOADING."  Kyocera lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations set forth in Paragraph 13 of the Complaint and on that basis denies those allegations.

14.     Kyocera denies the allegations in Paragraph 14 of the Complaint.

15.     Kyocera denies the allegations in Paragraph 15 of the Complaint to the extent they relate to Kyocera.  To the extent Paragraph 15 of the Complaint relates to any defendant other than Kyocera, Kyocera lacks sufficient knowledge or information to form a belief as to the truth of

those allegations and on that basis denies those allegations.

**(Direct Infringement)**

16.      Kyocera denies the allegations in Paragraph 16 of the Complaint.

17.      Kyocera denies the allegations in Paragraph 17 of the Complaint to the extent they relate to Kyocera.  To the extent Paragraph 17 of the Complaint relates to any defendant other than Kyocera, Kyocera lacks sufficient knowledge or information to form a belief as to the truth of those allegations and on that basis denies those allegations.

18.      Kyocera denies the allegations in Paragraph 18 of the Complaint to the extent they relate to Kyocera.  To the extent Paragraph 18 of the Complaint relates to any defendant other than Kyocera, Kyocera lacks sufficient knowledge or information to form a belief as to the truth of those allegations and on that basis denies those allegations.

**(Indirect Infringement- Inducement)**

19.      Kyocera denies the allegations in Paragraph 19 of the Complaint.

20.      Kyocera denies the allegations in Paragraph 20 of the Complaint to the extent they relate to Kyocera.  To the extent Paragraph 20 of the Complaint relates to any defendant other than Kyocera, Kyocera lacks sufficient knowledge or information to form a belief as to the truth of those allegations and on that basis denies those allegations.

21.      Kyocera admits that it received a purported copy of the '212 patent when it was served with the Complaint.  Kyocera denies the remaining allegations in Paragraph 21 of the Complaint to the extent they relate to Kyocera.  To the extent Paragraph 21 of the Complaint relates to any defendant other than Kyocera, Kyocera lacks sufficient knowledge or information to form a belief as to the truth of those allegations and on that basis denies those allegations.

22.      Kyocera denies the allegations in Paragraph 22 of the Complaint to the extent they relate to Kyocera.  To the extent Paragraph 22 of the Complaint relates to any defendant other than Kyocera, Kyocera lacks sufficient knowledge or information to form a belief as to the truth of those allegations and on that basis denies those allegations.

23.      Kyocera denies the allegations in Paragraph 23 of the Complaint to the extent they relate to Kyocera.  To the extent Paragraph 23 of the Complaint relates to any defendant other than

Kyocera, Kyocera lacks sufficient knowledge or information to form a belief as to the truth of those allegations and on that basis denies those allegations.

24.     Kyocera denies that as of the filing of the Complaint, Kyocera was obligated to provide Adaptix with any evidence.  Kyocera denies the remaining allegations in Paragraph 24 of the Complaint to the extent they relate to Kyocera.  To the extent Paragraph 24 of the Complaint relates to any defendant other than Kyocera, Kyocera lacks sufficient knowledge or information to form a belief as to the truth of those allegations and on that basis denies those allegations.

**(Indirect Infringement- Contributory)**

25.     Kyocera denies the allegations in Paragraph 25 of the Complaint.

26.     Kyocera denies the allegations in Paragraph 24 [*sic*] of the Complaint to the extent they relate to Kyocera.  To the extent Paragraph 24 [*sic*] of the Complaint relates to any defendant other than Kyocera, Kyocera lacks sufficient knowledge or information to form a belief as to the truth of those allegations and on that basis denies those allegations.

27.     Kyocera denies the allegations in Paragraph 25 [*sic*] of the Complaint to the extent they relate to Kyocera.  To the extent Paragraph 25 [*sic*] of the Complaint relates to any defendant other than Kyocera, Kyocera lacks sufficient knowledge or information to form a belief as to the truth of those allegations and on that basis denies those allegations.

28.     Kyocera admits that it received a purported copy of the '212 patent when it was served with the Complaint.  Kyocera denies the remaining allegations in Paragraph 26 [*sic*] of the Complaint to the extent they relate to Kyocera.  To the extent Paragraph 26 [*sic*] of the Complaint relates to any defendant other than Kyocera, Kyocera lacks sufficient knowledge or information to form a belief as to the truth of those allegations and on that basis denies those allegations.

29.     Kyocera denies the allegations in Paragraph 27 [*sic*] of the Complaint to the extent they relate to Kyocera.  To the extent Paragraph 27 [*sic*] of the Complaint relates to any defendant other than Kyocera, Kyocera lacks sufficient knowledge or information to form a belief as to the truth of those allegations and on that basis denies those allegations.

30.     Kyocera admits that it received a copy of the Complaint containing Adaptix's purported infringement allegations.  Kyocera denies the remaining allegations of Paragraph 28

[*sic*] of the Complaint to the extent they relate to Kyocera.  To the extent Paragraph 28 [*sic*] of the Complaint relates to any defendant other than Kyocera, Kyocera lacks sufficient knowledge or information to form a belief as to the truth of those allegations and on that basis denies those allegations.

## COUNT II

### (INFRINGEMENT OF U.S. PATENT NO. 6,947,748)

31.     Kyocera incorporates by reference its responses to Paragraphs 1-28 [*sic*] of the Complaint, including its responses to the duplicate Paragraphs 24-25 of the Complaint, set forth above as if fully restated in this paragraph.

32.     Kyocera admits that the Complaint purports to state a cause of action for patent infringement, but denies that there has been any act of infringement by Kyocera.  To the extent Paragraph 30 [*sic*] of the Complaint states a conclusion of law, no answer is required.

33.     Kyocera admits that the document attached as Exhibit B to the Complaint purports to be United States Patent No. 6,947,748 ("the '748 patent") and on its face is titled "OFDMA WITH ADAPTIVE SUBCARRIER-CLUSTER CONFIGURATION AND SELECTIVE LOADING."  Kyocera lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations set forth in Paragraph 31 [*sic*] of the Complaint and on that basis denies those allegations.

34.     Kyocera denies the allegations in Paragraph 32 [*sic*] of the Complaint.

35.     Kyocera denies the allegations in Paragraph 33 [*sic*] of the Complaint to the extent they relate to Kyocera.  To the extent Paragraph 33 [*sic*] of the Complaint relates to any defendant other than Kyocera, Kyocera lacks sufficient knowledge or information to form a belief as to the truth of those allegations and on that basis denies those allegations.

### (Direct Infringement)

36.     Kyocera denies the allegations in Paragraph 34 [*sic*] of the Complaint.

37.     Kyocera denies the allegations in Paragraph 35 [*sic*] of the Complaint to the extent they relate to Kyocera.  To the extent Paragraph 35 [*sic*] of the Complaint relates to any defendant other than Kyocera, Kyocera lacks sufficient knowledge or information to form a belief as to the

truth of those allegations and on that basis denies those allegations.

38.     Kyocera denies the allegations in Paragraph 36 [*sic*] of the Complaint to the extent they relate to Kyocera.  To the extent Paragraph 36 [*sic*] of the Complaint relates to any defendant other than Kyocera, Kyocera lacks sufficient knowledge or information to form a belief as to the truth of those allegations and on that basis denies those allegations.

**(Indirect Infringement- Inducement)**

39.     Kyocera denies the allegations in Paragraph 37 [*sic*] of the Complaint.

40.     Kyocera denies the allegations in Paragraph 38 [*sic*] of the Complaint to the extent they relate to Kyocera.  To the extent Paragraph 38 [*sic*] of the Complaint relates to any defendant other than Kyocera, Kyocera lacks sufficient knowledge or information to form a belief as to the truth of those allegations and on that basis denies those allegations.

41.     Kyocera admits that it received a purported copy of the '748 patent when it was served with the Complaint.  Kyocera denies the remaining allegations in Paragraph 39 [*sic*] of the Complaint to the extent they relate to Kyocera.  To the extent Paragraph 39 [*sic*] of the Complaint relates to any defendant other than Kyocera, Kyocera lacks sufficient knowledge or information to form a belief as to the truth of those allegations and on that basis denies those allegations.

42.     Kyocera denies the allegations in Paragraph 40 [*sic*] of the Complaint to the extent they relate to Kyocera.  To the extent Paragraph 40 [*sic*] of the Complaint relates to any defendant other than Kyocera, Kyocera lacks sufficient knowledge or information to form a belief as to the truth of those allegations and on that basis denies those allegations.

43.     Kyocera denies the allegations in Paragraph 41 [*sic*] of the Complaint to the extent they relate to Kyocera.  To the extent Paragraph 41 [*sic*] of the Complaint relates to any defendant other than Kyocera, Kyocera lacks sufficient knowledge or information to form a belief as to the truth of those allegations and on that basis denies those allegations.

44.     Kyocera denies that as of the filing of the Complaint, Kyocera was obligated to provide Adaptix with any evidence.  Kyocera denies the remaining allegations in Paragraph 42 [*sic*] of the Complaint to the extent they relate to Kyocera.  To the extent Paragraph 42 [*sic*] of the Complaint relates to any defendant other than Kyocera, Kyocera lacks sufficient knowledge or

1   information to form a belief as to the truth of those allegations and on that basis denies those

2   allegations.

3   <center>**(Indirect Infringement- Contributory)**</center>

4        45.     Kyocera denies the allegations in Paragraph 43 [*sic*] of the Complaint.

5        46.     Kyocera denies the allegations in Paragraph 44 [*sic*] of the Complaint to the extent

6   they relate to Kyocera.  To the extent Paragraph 44 [*sic*] of the Complaint relates to any defendant

7   other than Kyocera, Kyocera lacks sufficient knowledge or information to form a belief as to the

8   truth of those allegations and on that basis denies those allegations.

9        47.     Kyocera denies the allegations in Paragraph 45 [*sic*] of the Complaint to the extent

10  they relate to Kyocera.  To the extent Paragraph 45 [*sic*] of the Complaint relates to any defendant

11  other than Kyocera, Kyocera lacks sufficient knowledge or information to form a belief as to the

12  truth of those allegations and on that basis denies those allegations.

13       48.     Kyocera admits that it received a purported copy of the '748 patent when it was

14  served with the Complaint.  Kyocera denies the remaining allegations in Paragraph 46 [*sic*] of the

15  Complaint to the extent they relate to Kyocera.  To the extent Paragraph 46 [*sic*] of the Complaint

16  relates to any defendant other than Kyocera, Kyocera lacks sufficient knowledge or information to

17  form a belief as to the truth of those allegations and on that basis denies the same.

18       49.     Kyocera denies the allegations in Paragraph 47 [*sic*] of the Complaint to the extent

19  they relate to Kyocera.  To the extent Paragraph 47 [*sic*] of the Complaint relates to any defendant

20  other than Kyocera, Kyocera lacks sufficient knowledge or information to form a belief as to the

21  truth of those allegations and on that basis denies those allegations.

22       50.     Kyocera admits that it received a copy of the Complaint containing Adaptix's

23  purported infringement allegations.  Kyocera denies the remaining allegations of Paragraph 48

24  [*sic*] of the Complaint to the extent they relate to Kyocera.  To the extent Paragraph 48 [*sic*] of the

25  Complaint relates to any defendant other than Kyocera, Kyocera lacks sufficient knowledge or

26  information to form a belief as to the truth of those allegations and on that basis denies those

27  allegations.

28  <center>**PRAYER FOR RELIEF**</center>

Kyocera denies that Adaptix is entitled to any of the relief sought in the Complaint against Kyocera. Adaptix's prayer for relief should be denied in its entirety and with prejudice. To the extent Adaptix's prayer for relief relates to any defendant other than Kyocera, Kyocera lacks sufficient knowledge or information to form a belief as to the truth of those allegations underlying the prayer for relief and on that basis denies the prayer for relief. To the extent not expressly addressed above, the factual allegations in the Complaint are denied. Kyocera reserves the right to amend its answer once discovery commences and progresses.

<div align="center">

**DEFENSES**

</div>

Kyocera asserts the following affirmative and other defenses to the Complaint without conceding that any of the following defenses must be pled as affirmative defenses and without assuming any burden of proof that Kyocera would not otherwise have:

<div align="center">

**FIRST AFFIRMATIVE DEFENSE**

**(Non-Infringement of the '212 Patent)**

</div>

51.     Kyocera has not infringed and does not infringe, either directly, indirectly, jointly, contributorily, or by inducement, any valid and enforceable claim of the '212 patent, either literally or under the doctrine of equivalents, willfully, or in any other manner.

<div align="center">

**SECOND AFFIRMATIVE DEFENSE**

**(Invalidity of the '212 Patent)**

</div>

52.     The claims of the '212 patent are invalid because they fail to satisfy one or more conditions for patentability set forth in 35 U.S.C. § 101 *et seq.*, including but not limited to sections 101, 102, 103, and 112.

<div align="center">

**THIRD AFFIRMATIVE DEFENSE**

**(Non-Infringement of the '748 Patent)**

</div>

53.     Kyocera has not infringed and does not infringe, either directly, indirectly, jointly, contributorily, or by inducement, any valid and enforceable claim of the '748 patent either literally or under the doctrine of equivalents, willfully, or in any other manner.

<div align="center">

**FOURTH AFFIRMATIVE DEFENSE**

**(Invalidity of the '748 Patent)**

</div>

54.     The claims of the '748 patent are invalid because they fail to satisfy one or more conditions for patentability set forth in 35 U.S.C. § 101 *et seq.*, including but not limited to sections 101, 102, 103, and 112.

## FIFTH AFFIRMATIVE DEFENSE

### (Prosecution History Estoppel)

55.     By reason of proceedings before the United States Patent and Trademark Office during prosecution of the '212 and '748 patents, and specifically as a result of statements, arguments, amendments, assertions, and/or representations made by or on behalf of the applicants for the '212 and '748 patents, Adaptix is estopped from construing the claims of the '212 and '748 patents in any way to cover any product, method, or service of Kyocera under the doctrine of equivalents.

## SIXTH AFFIRMATIVE DEFENSE

### (Equitable Doctrines)

56.     Adaptix's claim for damages is barred, in whole or in part, by the equitable doctrines of laches, estoppel, unclean hands, acquiescence, and/or waiver.

## SEVENTH AFFIRMATIVE DEFENSE

### (Limitations on Recovery)

57.     Adaptix's claim for damages is limited by the six-year time limitation under 35 U.S.C. § 286.  Adaptix has failed to comply with the provisions of 35 U.S.C. § 287, and any claim for damages for patent infringement is limited to those damages occurring after legally proper notice of alleged infringement.  To the extent that any claim of the '212 and '748 patents is held invalid, Adaptix is precluded under 35 U.S.C. § 288 from recovering costs relating to this action.

## EIGHTH AFFIRMATIVE DEFENSE

### (No Injunctive Relief)

58.     Adaptix's claim for injunctive relief is barred at least because Adaptix has no irreparable injury and has an adequate remedy at law.

## NINTH AFFIRMATIVE DEFENSE

### (License or Exhaustion)

Case No. 5:14-cv-02895-PSG
KYOCERA'S FIRST AMENDED ANSWER

59.     Adaptix's claims are precluded, in whole or in part, to the extent that any allegedly infringing products or components thereof are supplied, directly or indirectly, to Kyocera by, or by Kyocera to, any entity or entities that have an express or implied license to the '212 and/or '748 patents, and/or under the doctrine of patent exhaustion.

### TENTH AFFIRMATIVE DEFENSE

### (Inequitable Conduct or Unclean Hands)

60.     On information and belief, in the mid to late 1990s, AT&T Wireless Services, Inc. ("AT&T") designed, implemented, and sold a wireless system incorporating orthogonal frequency-division multiple access ("OFDMA") technology, code named "Project Angel." Project Angel used both a base station and a remote unit for transmitting data through wireless systems based on OFDMA technology.

61.     On information and belief, during AT&T's development of Project Angel, AT&T created a number of confidential documents, data, and source code related to the project. AT&T marked the documents, data, and source code as "proprietary" and "confidential" to ensure their protection and prevent their disclosure. For example, AT&T employees working on Project Angel were required to sign a non-disclosure agreement ("NDA") which precluded employees from disclosing AT&T's confidential information. AT&T took additional precautions to protect Project Angel during its development, such as covering windows in buildings with metalized film to prevent non-authorized personnel from electronically eavesdropping on AT&T personnel associated with Project Angel. AT&T also sought and obtained a number of patents related to Project Angel, resource allocation, and OFDMA technology.

62.     On information and belief, by October 1, 1999, AT&T had offered its Project Angel service for sale in the United States.

63.     On information and belief, James Hite started working at AT&T and on Project Angel in 1995. On information and belief, Mr. Hite signed an NDA and non-compete agreement ("NCA") with AT&T prior to working on Project Angel. On information and belief, Mr. Hite had access to and was provided confidential information and documents related to Project Angel while employed with AT&T.

64.     On information and belief, in 1996, Liang Hong started working at AT&T and on Project Angel. On information and belief, Mr. Hong signed an NDA and an NCA with AT&T prior to working on Project Angel. From at least 1998-2000, Mr. Hong's position was manager of system engineering at AT&T. Mr. Hong had access to and was provided confidential information and documents related to Project Angel, and other AT&T technologies, while employed at AT&T. At AT&T, Mr. Hong was instrumental in the definition and implementation of the channel allocation for the AT&T Project Angel system. He knew the details of the channel allocation algorithm used in Project Angel.

65.     On information and belief, in 1998, Palaniappan Meiyappan started working at AT&T and on Project Angel. On information and belief, Mr. Meiyappan signed an NDA and an NCA with AT&T prior to working on Project Angel. On information and belief, Mr. Meiyappan had access to and was provided confidential information and documents related to Project Angel while employed with AT&T.

66.     On information and belief, on June 20, 2000, Mr. Hong and other inventors filed patent applications, including U.S. Patent Application Nos. 09/597,043 and 09/597,044, both of which claimed priority to U.S. Provisional Application No. 60/140,959 filed on June 23, 1999, on technology related to Project Angel on behalf of AT&T, which were later granted as U.S. Patent Nos. 6,801,775 and 6,801,513 and assigned to AT&T.

67.     On information and belief, by April 2000, the founders of Broadstorm Inc. ("Broadstorm") had promised its investors that Broadstorm could develop a prototype of a wireless system in just 9 months. On information and belief, however, founder Hui Liu knew that he could not meet that deadline without hiring others with additional skills beyond his.

68.     On information and belief, in April 2000, Dr. Liu and his co-founders hatched a scheme to "lure" key AT&T Project Angel employees to Broadstorm. Part of this scheme involved a sales "pitch" that offered new employees the chance to "retire early." To entice key AT&T Project Angel employees, Broadstorm offered them higher salaries than anyone, other than the CEO, was being paid at Broadstorm.

69.     On information and belief, Broadstorm began recruiting Mr. Hite in September

2000 due to Mr. Hite's employment with AT&T and work on Project Angel. Mr. Hite started working at Broadstorm in October 2000 to assist Broadstorm in developing prototype wireless hardware. Broadstorm regarded Mr. Hite as an essential and important contributor to meeting Broadstorm's aggressive technology milestones.

70. On information and belief, Broadstorm began recruiting Mr. Meiyappan in September 2000 due to Mr. Meiyappan's employment with AT&T and work on Project Angel. Broadstorm believed that Mr. Meiyappan fit "PERFECTLY" with its needs. Broadstorm hoped that Mr. Meiyappan could "jump start" its design process.

71. On information and belief, Broadstorm knew Mr. Meiyappan had signed an NDA with AT&T and characterized that as a "problem." Broadstorm recognized that there were "indeed similarities" between AT&T's Project Angel and the technology that Broadstorm wanted to develop. One solution that Broadstorm co-founder Dr. Hui Liu offered to this "problem," was to give Mr. Meiyappan an offer and pretend they didn't know anything. That was the solution that Broadstorm adopted. Broadstorm offered Mr. Meiyappan more money than any of the named inventors on the patents in this lawsuit, and more money than any other person at Broadstorm other than its CEO.

72. On information and belief, Mr. Meiyappan started working at Broadstorm at least as early as October 1, 2000. Broadstorm co-founder Dr. Hui Liu asked Mr. Meiyappan to provide confidential information from AT&T's Project Angel design work. Dr. Liu referred to AT&T in this exchange as "you know who," because he knew that Mr. Meiyappan had a non-compete agreement with AT&T and did not want to mention "AT&T" in writing. Broadstorm believed that Mr. Meiyappan provided valued input to Broadstorm's technology design. Some of Mr. Meiyappan's employment with Broadstorm occurred while he was still employed with AT&T. While at Broadstorm, months after leaving AT&T, Mr. Meiyappan filed a patent application related to a method of allocating channels in an OFDMA system that uses the geographic location of the subscriber to determine the channel allocation.

73. On information and belief, Broadstorm began recruiting Mr. Hong on or before October 2000 due to Mr. Hong's employment with AT&T and work on Project Angel.

Broadstorm knew Mr. Hong had signed an NDA with AT&T. By October 24, 2000, Mr. Hong was consulting with Broadstorm regarding their technology design. By October 29, 2000, Broadstorm had offered Mr. Hong a formal consulting agreement with Broadstorm to assist Broadstorm in wireless access network design and interface development, including the development of software and algorithms for resource allocation. By November 8, 2000, Broadstorm regarded Mr. Hong as its group leader in network architecture, despite the fact that he was still being paid as a full time employee of AT&T. Mr. Hong consulted extensively with Broadstorm during November and December of 2000 regarding Broadstorm's technology designs. While employed with Broadstorm, Mr. Hong's position was senior vice president of engineering. Mr. Hong helped design Broadstorm's fixed wireless system including the Airlink interface used to allocate channels in that system. While at Broadstorm, Mr. Hong provided Broadstorm's management information that he characterized as "dirty laundry" about AT&T's Project Angel that was not known to the public. Mr. Hong also provided AT&T's source code to Broadstorm's consultant who was designing Broadstorm's fixed wireless product. Mr. Hong had no authorization from AT&T to provide any information to Broadstorm about Project Angel.

74.     On information and belief, with the hiring of Mr. Hong, Mr. Hite, and Mr. Meiyappan, Broadstorm believed it could know all of the engineering details of AT&T's Project Angel and wireless OFDMA technology.

75.     On information and belief, Broadstorm had not executed an NDA, or any other similar confidentiality agreement, with AT&T that would allow Broadstorm access to AT&T's confidential information or documents. Adaptix is aware of no facts showing that it would be proper for Broadstorm to have possessed the AT&T confidential information. On information and belief, one or more of Mr. Hong, Mr. Hite, and Mr. Meiyappan provided Broadstorm with confidential information and documents related to AT&T's Project Angel and wireless OFDMA technology. On information and belief, Broadstorm improperly obtained and used AT&T's confidential information and documents related to Project Angel in developing Broadstorm's wireless products and improperly claimed AT&T's work as Broadstorm property in Broadstorm patent applications.

76.     On information and belief, during related litigations, Adaptix produced over 50 of AT&T's confidential and proprietary documents related to Project Angel that, on information and belief, were improperly obtained, possessed, and used by Broadstorm to develop its wireless products. Adaptix has no answer as to how it obtained those documents, when it obtained those documents, who saw them, or how they were used. Adaptix also has failed to preserve and produce metadata associated with AT&T's confidential and proprietary documents relating to Broadstorm's conduct in obtaining and possessing these documents.

77.     On information and belief, Hiu Liu was Chief Technology Advisor for Adaptix at least between 2004 and 2006.

78.     On information and belief, Broadstorm co-founder Hui Liu admitted during his deposition on July 1, 2014, that he was aware of Project Angel at least as early as the year 2000.

79.     Adaptix did not identify Project Angel to the USPTO in connection with prosecution of the '212 and '748 patents, or any of Adaptix's patents.  On information and belief, for all the reasons set forth herein, Mr. Liu and Adaptix were aware that Project Angel was material to the patentability of the claims of the '748 and '212 patents.

80.     On June 19, 2001, Xiadong Li, Hui Liu, Kemin Li and Wenzhong Zhang purported to assign their alleged rights to the 09/738,086 application which issued as the '748 patent and later as the '212 patent to Broadstorm Telecommunications, Inc. This assignment stated that Mr. Xiadong Li, Mr. Liu, Mr. Kemin Li and Mr. Wenzhong Zhang purported to sell, assign, and transfer to Broadstorm Telecommunications, Inc. "the entire right, title, and interest for the United States and all foreign countries, in and to any and all improvements that are disclosed in the application for the United States patent that was filed December 15, 2000 and assigned Application No. 09/738,036" and that they had "full right to convey the same."

81.     On information and belief, at least Mr. Liu knew that the materials filed in the 09/738,036 application were substantially and/or entirely taken and/or from AT&T's Project Angel and AT&T proprietary and confidential materials without permission and that his ownership and right to assign such ideas, information or materials was absent or questionable. On information and belief this and subsequent conveyances of the alleged rights to the 09/738,086

1    constituted fraudulent conveyances.

2        82.    On information and belief, in filing his declaration and oaths for United States

3    Patent Application No. 09/738,086 on July 23, 2001 and December 12, 2005, which issued

4    respectively as U.S. Patent No. 6,947,748 and its alleged continuation U.S. Patent No. 7,454,212,

5    both asserted in this litigation, Mr. Liu falsely declared that he was "an original, first, and joint

6    inventor" with the alleged inventors named on the face of the '748 and '212 patent, Mr. Xiaodong

7    Li, Mr. Kemin Li, and Mr. Wenzhong Zhang, knowing this to be false and untrue.

8        83.    A document purporting to be the "assignment of assignors interest" was executed

9    by the alleged inventors on June 19, 2001. It was recorded in the USPTO's assignment database at

10   Reel/Frame No. 012007/0222 on 07/23/2001. This document purported to convey ownership to

11   Broadstorm Telecommunication Inc. Recordation of this document was an intentional act. On

12   information and belief this act intended to deceive the public of the true ownership of the '748

13   patent.

14       84.    A document purporting to be the "assignment of assignors interest" was executed

15   by the alleged inventors on June 19, 2001. It was recorded in the USPTO's assignment database at

16   Reel/Frame No. 17116/0553 on February 3, 2006. This document purported to convey ownership

17   to Broadstorm Telecommunication Inc. Recordation of this document was an intentional act. Upon

18   information and belief this act was intended to deceive the public of the true ownership of the

19   '212.

20       85.    On March 9, 2006, Adaptix, Inc. filed a Statement Under 37 CFR 3.73(b) to

21   establish the right of the assignee to take action in front of the USPTO which alleges Adaptix is

22   the owner of the '212 patent. On information and belief, Adaptix knowingly misrepresented its

23   ownership of the '212 patents to the USPTO.

24       86.    On April 11, 2005, Adaptix, Inc. filed a Statement Under 37 CFR 3.73(b) to

25   establish the right of the assignee to take action in front of the USPTO which alleges Adaptix is

26   the owner of the '748 patent. On information and belief, Adaptix knowingly misrepresented its

27   ownership of the 748 patent to the USPTO.

28       87.    On information and belief, the subject matter claimed in the '212 and '748 patents

1   was improperly derived from AT&T's confidential information, including the confidential

2   information and documents related to AT&T's Project Angel, which was not disclosed to the

3   USPTO and kept secret during prosecution of the '212 and '748 patents.

4       88.     On information and belief, Adaptix is the successor-in-interest to Broadstorm, a

5   predecessor company to Adaptix.

6       89.     Although Adaptix alleges in its Complaint that the '748 and '212 patents are valid,

7   enforceable, and were duly issued in full compliance with Title 35 of the United States Code, each

8   and every claim of those patents is unenforceable due to unclean hands and inequitable conduct. In

9   particular, named inventor Liu committed inequitable conduct at least by submitting a false oath

10  and declaration with deceptive intent regarding the inventorship of the alleged inventions, and

11  Adaptix committed inequitable conduct at least by submitting a 3.73(b) declaration

12  misrepresenting its ownership in the '748 and '212 patents.  Because the '212 patent purports to be

13  a continuation of the '748 patent, it is unenforceable additionally under the doctrine of infection

14  unenforceability for the same reasons as the '748 patent.

15      90.     Accordingly, Adaptix is barred by the doctrines of inequitable conduct and unclean

16  hands from enforcing the '212 patent and the '748 patent against Kyocera.

17              **RESERVATION OF ADDITIONAL DEFENSES**

18      91.     Kyocera's investigation of its defenses is ongoing.  Kyocera expressly reserves the

19  right to allege and assert any additional defenses, at law or in equity, that may exist now or may be

20  available in the future based on discovery and further investigation in this action.

21                          **COUNTERCLAIMS**

22      In accordance with Rule 13 of the Federal Rules of Civil Procedure, Kyocera  asserts

23  counterclaims against Adaptix as follows:

24                          **THE PARTIES**

25      1.      Counterclaimant Kyocera Communications, Inc. is a corporation incorporated

26  under the laws of Delaware with its principal place of business at 9520 Towne Centre Drive, San

27  Diego, California 92121.

28      2.      On information and belief, Counterclaim-Defendant Adaptix Inc. is a Texas limited

1  liability company with its principal place of business in Plano, Texas.

2  <div align="center">**JURISDICTION AND VENUE**</div>

3      3.      These Counterclaims arise under the Federal Declaratory Judgment Act, 28 U.S.C.

4  § 2201 *et seq*., and the patent laws of the United States, 35 U.S.C. § 101 *et seq*.  This Court has

5  subject matter jurisdiction over these Counterclaims pursuant to 28 U.S.C. §§ 1331, 1338, 2201,

6  and 2202.  An actual controversy exists under the Declaratory Judgment Act because Adaptix has

7  asserted and is asserting infringement of the '212 and '748 patents by Kyocera and Kyocera denies

8  those allegations.

9      4.      This Court also has personal jurisdiction over Adaptix because Adaptix consented

10  to the personal jurisdiction of this Court by agreeing to transfer its suit alleging infringement of

11  the '212 and '748 patents to this Court and, upon information and belief.

12      5.      Venue is appropriate pursuant to 28 U.S.C. §§ 1391(b)-(c) and 1400(b), and

13  because Adaptix has consented to this venue by agreeing to transfer its Complaint here, and the

14  present Counterclaims are in response to the allegations contained in the Complaint.

15  <div align="center">**COUNTERCLAIM COUNT I**</div>

16  <div align="center">**(Declaratory Judgment of Non-Infringement of the '212 Patent)**</div>

17      6.      Kyocera incorporates by reference the allegations contained in Paragraphs 1-5 of its

18  Counterclaims set forth above as if fully restated in this paragraph.

19      7.      An actual, continuing and justiciable controversy exists between Kyocera and

20  Adaptix as to Kyocera's non-infringement of the '212 patent as evidenced by Adaptix's Complaint

21  and Kyocera's Answer, as set forth above.  Absent a declaration of non-infringement, Adaptix will

22  continue to wrongfully assert the '212 patent against Kyocera, and continue to cause Kyocera

23  injury and damage.

24      8.      Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq*.,

25  Kyocera requests a judicial determination and declaration that Kyocera has not infringed and does

26  not infringe, either directly, indirectly, jointly, contributorily, or by inducement, any valid and

27  enforceable claim of the '212 patent either literally or under the doctrine of equivalents, willfully,

28  or in any other manner.

## COUNTERCLAIM COUNT II

### (Declaratory Judgment of Invalidity of the '212 Patent)

9.      Kyocera incorporates by reference the allegations contained in Paragraphs 1-8 of its Counterclaims set forth above as if fully restated in this paragraph.

10.      An actual, continuing and justiciable controversy exists between Kyocera and Adaptix as to the validity and enforceability of the claims of the '212 patent as evidenced by Adaptix's Complaint and Kyocera's Answer, as set forth above.  Absent a declaration of invalidity or unenforceability of the claims of the '212 patent, Adaptix will continue to wrongfully assert those claims against Kyocera, and thereby continue to cause Kyocera injury and damage.

11.      Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq*., Kyocera requests a judicial determination and declaration that the claims of the '212 patent are invalid or unenforceable for failure to comply with one or more of the conditions of patentability set forth in Title 35 of the United States Code, including but not limited to, sections 101, 102, 103, and 112.

## COUNTERCLAIM COUNT III

### (Declaratory Judgment of Non-Infringement of the '748 Patent)

12.      Kyocera incorporates by reference the allegations contained in Paragraphs 1-11 of its Counterclaims set forth above as if fully restated in this paragraph.

13.      An actual, continuing and justiciable controversy exists between Kyocera and Adaptix as to Kyocera's non-infringement of the '748 patent as evidenced by Adaptix's Complaint and Kyocera's Answer, as set forth above.  Absent a declaration of non-infringement, Adaptix will continue to wrongfully assert the '748 patent against Kyocera, and continue to cause Kyocera injury and damage.

14.      Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq*., Kyocera requests a judicial determination and declaration that Kyocera has not infringed and does not infringe, either directly, indirectly, jointly, contributorily, or by inducement, any valid and enforceable claim of the '748 patent either literally or under the doctrine of equivalents, willfully, or in any other manner.

## COUNTERCLAIM COUNT IV

### (Declaratory Judgment of Invalidity of the '748 Patent)

15.     Kyocera incorporates by reference the allegations contained in Paragraphs 1-14 of its Counterclaims set forth above as if fully restated in this paragraph.

16.     An actual, continuing and justiciable controversy exists between Kyocera and Adaptix as to the validity and enforceability of the claims of the '748 patent as evidenced by Adaptix's Complaint and Kyocera's Answer, as set forth above.  Absent a declaration of invalidity or unenforceability of the claims of the '748 patent, Adaptix will continue to wrongfully assert those claims against Kyocera, and thereby continue to cause Kyocera injury and damage.

17.     Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, Kyocera requests a judicial determination and declaration that the claims of the '748 patent are invalid or unenforceable for failure to comply with one or more of the conditions of patentability set forth in Title 35 of the United States Code, including but not limited to, sections 101, 102, 103, and 112.

## DEMAND FOR JURY TRIAL

Kyocera demands a trial by jury of all issues so triable in this action.

## PRAYER FOR RELIEF

WHEREFORE, Kyocera respectfully requests that judgment be entered in its favor and against Adaptix as follows:

A.     That the Court dismiss Adaptix's claims in its Complaint against Kyocera with prejudice, and enter judgment on the Complaint in favor of Kyocera and against Adaptix;

B.     That the Court deny all relief from Kyocera requested by Adaptix in its Complaint;

C.     That the Court enter judgment in favor of Kyocera and against Adaptix on Kyocera's Counterclaims;

D.     That the Court find and enter a declaratory judgment that Kyocera does not infringe and has not infringed any valid and enforceable claim of the '212 and '748 patents;

E.     That the Court find and enter a declaratory judgment that the claims of the '212 and '748 patents are invalid and unenforceable;

1    F.    That the Court find and enter an order that this case is exceptional pursuant to 35

2  U.S.C. § 285 and award Kyocera its reasonable attorneys' fees;

3    G.    That the Court award Kyocera its costs of suit incurred in this action; and

4    H.    That the Court award Kyocera such other and further relief as the Court deems just

5  and appropriate.

6

7  DATED : January 30, 2015                    By: /s/ David Eiseman

8                                              David Eiseman (Bar No. 114758)
                                               QUINN EMANUEL URQUHART &
                                               SULLIVAN, LLP
9                                              50 California Street, 22nd Floor
                                               San Francisco, CA 94111
10                                             Telephone: (415) 875-6600
                                               Facsimile: (415) 875-6700
11                                             Email: davideiseman@quinnemanuel.com

12                                             Ryan S. Goldstein (Bar No. 208444)
                                               QUINN EMANUEL URQUHART &
13                                             SULLIVAN, LLP
                                               NBF Hibiya Building, 25F
14                                             1-1-7, Uchisaiwai-cho, Chiyoda-ku
                                               Tokyo 100-0011, Japan
15                                             Telephone:    +81 3 5510 1711
                                               Facsimile:    +81 3 5510 1712
16                                             ryangoldstein@quinnemanuel.com

17                                             Attorneys for Defendant KYOCERA
                                               COMMUNICATIONS, INC.
18

19

20

21

22

23

24

25

26

27

28

KYOCERA'S FIRST AMENDED ANSWER